Arnold Levy and Roberta Levy v. Commissioner. Arnold Levy v. Commissioner.
Levy v. Commissioner
Docket Nos. 704-67, 705-67.
United States Tax Court
T.C. Memo 1969-65; 1969 Tax Ct. Memo LEXIS 231; 28 T.C.M. (CCH) 371; T.C.M. (RIA) 69065; April 7, 1969, Filed *231 The evidence reviewed and it is, held, respondent failed to sustain his burden of proving fraud as to petitioner Arnold Levy for 1960 and 1961 but sustained his burden of proving fraud as to said petitioner in 1962. Held, also, respondent failed to prove fraud as to Roberta Levy for he failed to introduce any evidence that the 1962 return he alleged she filed was her 1962 income tax return. Alvin R. Cowan, 250 W. 57th, New York, N.Y., for the petitioners. Jay S. Hamelburg, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined deficiencies and additions to tax for fraud under section 6653(b), I.R.C. of 1954, against the petitioners in these consolidated cases, as follows: Year
DocketNumber
Petitioner
Deficiency$ HAddition to Tax§ 6653(b), I.R.C.1954
1960
705-67
Arnold Levy
$ 367.83
$183.92
1961
705-67
Arnold Levy
465.74
232.87
1962
704-67
Arnold and Roberta Levy
1,931.59
965.80
*232 Petitioners do not contest the deficiencies so the only question is whether any part of the underpayment in any of the years involved was due to fraud on the part of the petitioners with intent to evade or defeat tax. Findings of Fact Arnold and Roberta Levy were married in June of 1962 and at the time of the filing of the petitions herein they lived in Brooklyn, New York. All of the income tax returns referred to hereinafter were filed with the district director of internal revenue, Brooklyn, New York. Arnold Levy employed Jack Greenberg, a certified public accountant, to prepare all of his returns. Greenberg prepared the said returns knowing that the individual taxable income of Levy for each of the years involved was not correctly stated on said returns. It is stipulated that a return, identified in the record as Exhibit "D", is an income tax return for the year 1962 filed in the name of Roberta Rubin which is Roberta Levy's maiden name. On December 1, 1965, Jack Greenberg was indicted in the United States District Court, Eastern District of New York, on five counts of preparation of five false and fraudulent returns for certain named taxpayers (not including any of the *233 returns in this case) and two counts of bribery of one Hyman Marks, an employee of the Internal Revenue Service. Respondent failed to sustain his burden in docket No. 705-67 of proving any part of the underpayment in 1960 and 1961 was due to fraud on the part of the petitioner, Arnold Levy, with intent to evade or defeat tax. Respondent failed to sustain his burden in docket No. 704-67 with respect to petitioner, Roberta Levy, of proving any part of the underpayment in 1962 was due to fraud on her part. The underpayment in docket No. 704-67 for the year 1962 was due to fraud on the part of petitioner, Arnold Levy, with intent to evade tax. Opinion Respondent had the burden of proof to prove fraud. To sustain his burden clear 372 and convincing evidence of intentional wrongdoing on the part of Arnold Levy with respect to his returns for all of the years involved and on the part of Roberta Levy for the year 1962 was required. The intentional wrongdoing that respondent must prove was that petitioners knowingly understated their taxable income in their income tax returns with the specific purpose and intent of evading tax. Charles E. Mitchell, 32 B.T.A. 1093 (1935), *234 affd. 303 U.S. 391; Estate of William Kahr, 48 T.C. 929 (1967). Respondent's case is based upon the testimony of Jack Greenberg. The said witness testified he had been a certified public accountant for 25 years and that he had long been engaged in advising taxpayers and preparing income tax returns. He operated a store building office in Brooklyn wherein he had five employees. His office had prepared the income tax returns for Arnold's mother and father for many years, probably since 1952. As stated in our findings, the Government was prosecuting Greenberg on an indictment charging him with the preparation of false and fraudulent returns for five taxpayers and with the crime of bribing an internal revenue employee. In this case he testified that he had prepared the returns mentioned in the indictment and that he had given money to the internal revenue employee named in the indictment with intent to influence him with respect to income tax returns he had prepared for taxpayers. He testified that on other returns he had used fictitious names of doctors. He testified he had personally prepared several hundred returns for taxpayers for each of the years 1960, *235 1961 and 1962. He said he prepared other returns during those years besides Levy's that involved "padding, understatement and improper exemptions" but when asked to state how many, he replied: "It is difficult to give you a figure." Greenberg stated that he charged Levy $100 or $125 a year for preparing the returns for him. He admitted this was rather a large fee but he justified it by saying: I felt that since I was giving him so much time and extending myself to this extent where I realized - that I realized that we were entering fictitious figures, that I wished to be paid for this work accordingly. In general, Greenberg testified that he had not known Levy until he came to his office to have him prepare his 1960 income tax return. He said that Levy came to his office in the company of Eddie Andria, a mutual friend and the owner of a neighborhood restaurant located near his office. It was Greenberg's testimony that Andria introduced Levy to him and told him Levy had certain problems with his income tax and he was sure Greenberg could help him. In answer to a leading question from Government counsel, Greenberg testified that Levy brought with him another return that had already *236 been prepared by another accountant. He said this other return showed a large amount of tax due which Levy said he did not want to pay and Levy said, after Andria had left, that Andria had told him "[he] could do much better for him" and that he, Greenberg, had "certain friends up there [I.R.S.] that could handle the matter." Greenberg went on to tell that he made out a new return with some fictitious figures showing increased expenditures and understating income and Levy's mother as a dependent; that Levy went over the items he had entered in the incorrect return and signed it, after it was all filled out. He gave no copy of the return to Levy but he kept a copy of the return he prepared and filed it in his office files. When asked if he had the other return prepared by the other accountant he said, "I do not" and when asked if it had been left with him, he replied, "[it] may have been or he may have taken it. I do not recall." The 1960 return as filed by Greenberg contained a deduction for Levy's mother to which he was not entitled and such generalities as contributions "to church and various recognized charities $320.00" and interest on "various loans $120.00" and estimates *237 of local and excise taxes $163.50 and medical and drug expenses (without itemization) $961.40. The return reported gross income of $2,715 received as stenotype reporter for New York City and it failed to report $754.75 income Levy received from Speedyrite, Inc. The return as filed resulted in a refund to Levy of the tax withheld in the sum of $423.60. Greenberg testified he prepared and filed Levy's 1961 income tax return. Not much of his testimony was directed specifically to this return. However, Greenberg testified Levy had seen all returns before they were filed. This return took no exemption and did not list Levy's mother or anyone as his dependent and the standard deduction was 373 used. It reported total gross and taxable income of $1,024 as "Income as free-lance stenographer" with nothing withheld and it showed tax due in the sum of $108. This return failed to report income received from Speedyrite, Inc. in the sum of $2,698.27. However, when that income was later added to gross income and proper exemptions and business deductions allowed, the taxable income was only increased to $2,030.08. In June of 1962, Levy was married to Roberta Rubin. Greenberg prepared a return *238 for 1962 for Arnold Levy with the address of the taxpayer being in care of Andria. This return seems to have reported the correct or almost correct individual gross income of Levy but it failed to report $4,081 income of his wife, although the box on the return indicating it was a joint return was checked. This return also claimed an exemption for Levy's mother, Gertrude, to which Levy was not entitled. The name of Levy's wife, Roberta, does not appear on the return but the return also claimed an exemption for taxpayer's wife. Arnold Levy was the only signer of the return. This return contained general and estimated deductions for contributions, interest and taxes, much like the 1960 return. It took a medical expense deduction and reported medical expenses in the sum of $1,450. In an attached list the medical expenses were explained by payments of certain sums to Blue Cross and "Various Doctors" and payments to Dr. Sacks, Dr. Pollack, Dr. Priuse, Dr. Weinstein and Dr. Pilde. It fairly appears from the record that the names of Dr. Sacks, Dr. Priuse, Dr. Weinstein and Dr. Pilde were fictitious. He said that these doctor names had been given to him by Levy but he also said he had used *239 fictitious names of doctors on other returns that he had filed but he could not recall whether he had used the names Sacks, Pollack, Priuse, Weinstein or Pilde on other returns. This return produced a refund to Levy of $100.14. Greenberg testified that after the above return was filed Levy brought his wife's W-2 form for the year 1962 to him. He said he and Levy decided to file a separate return for her rather than an amended return, for amended returns received an automatic audit and they knew the first return was incorrect. Greenberg testified he prepared Exhibit "D", which was a Federal income tax return for Roberta Rubin, again with the address of the taxpayer being in care of Andria, purporting to be the return of an "unmarried head of household" and claiming an exemption for Roberta's mother, Claire, to which she was not entitled. Of course, this return took Roberta as an exemption. This return also overstated itemized deductions with fictitious names of doctors and showed a refund due in the sum of $624.49. When the refund check in the sum of $624.49 made out to Roberta Rubin as payee was received it was cashed by Greenberg after Levy had endorsed his wife's maiden name on *240 the check. It was Levy's testimony that he did not bring this $624.49 refund check to Greenberg to be cashed. He said Greenberg "had the check." He said Greenberg "called me up and said my refund was here." When asked how Greenberg got the check he said, "I don't know." Levy testified he had had returns prepared by Greenberg prior to his 1960 return. He said he had met Greenberg in the 1950s and he had come to Greenberg because his parents had used Greenberg to prepare their returns. He said he relied upon Greenberg to prepare proper returns. He denied that he had used any other accountant to prepare a 1960 return. He said Andria had not brought him to Greenberg's office. He testified he gave Greenberg his W-2 forms and all information about his income and all doctor bills and dentist bills and bills for his car. He said he never told Greenberg his mother was a dependent and his mother's name was not on the 1960 return as a dependent when he signed it. He said he told Greenberg of the income from Speedyrite, Inc. but Greenberg told him the tax would be paid by the corporation. He said he signed partially filled out returns and he did not know the returns overstated deductions and *241 understated income. We hold respondent did not meet his burden with respect to the years 1960 and 1961. Greenberg's testimony was without corroboration when, apparently some corroboration of his story was available, if true. Respondent did not call Andria whose testimony would have been very significant. Greenberg was an admitted preparer of false returns. The testimony of such a witness might, if true, tend to establish fraud on the part of the taxpayer. But it loses its probative value when it is susceptible of corroboration and that corroborative testimony is not produced. Here the testimony of Greenberg with respect to petitioner bringing a correct 1960 return, made out by another accountant, would, if true, be quite 374 persuasive on the fraud issue with respect to the 1960 return. Andria might have corroborated the story of this other return and with the burden on respondent he should have been produced by respondent if this evidence is to be believed over Levy's denial that it is true. The 1961 return failed to report income from Speedyrite. It produced no refund and in fact reported a tax due of $108. There were no specific deductions taken on this return. It also *242 showed a failure to take deductions which respondent later determined could be taken. Levy's explanation with respect to the failure to include the Speedyrite, Inc. income in both his 1960 and 1961 returns is not very clear. But there is no unequivocal denial on the part of Greenberg that he did tell Levy he did not need to include this income. When he was asked if Levy told him that he was connected with Speedyrite, he replied, "I do not recall." Without further review we hold for petitioner in docket No. 705-67. The record does no more than establish a suspicion that petitioner knew his income for 1960 and 1961 was more than he was reporting. But suspicion is not enough. It falls short of proving by clear and convincing evidence that petitioner intended to defraud in the years 1960 and 1961. Walter M. Ferguson, Jr., 14 T.C. 846 (1950). The situation is quite different in docket No. 704-67 where Arnold Levy and his wife, Roberta, are charged with fraud with respect to the two 1962 returns. Greenberg's testimony of what occurred with respect to Levy's 1962 return is much more believable than the testimony of Arnold. Arnold and Roberta testified they both went to *243 Greenberg together and it was Greenberg who told them they should each file separate returns as that would give them bigger refunds. They testified they both signed individual returns that Greenberg prepared for them but Roberta denied Exhibit "D" was the return she signed. She said she signed a return in her married name and not in her maiden name. She denied the signature on Exhibit "D", Roberta Rubin, her maiden name, was her signature and said that was not the return she signed. Arnold testified that none of the incorrect or fictitious statements were on the return that he signed when he signed it. He said he told Greenberg to give his address in care of Andria as he wanted refunds to go to Andria. He said his wife was with him in Greenberg's office but still Greenberg asked him the name of his wife's mother. Roberta testified she knew she was going to get a refund check as a result of the return she filed. She could not remember that she ever saw the refund check made out in her maiden name. Then on redirect examination she said she authorized Arnold to endorse her name on the check so it could be cashed. As previously stated, this check was cashed by Greenberg. We feel respondent *244 met his burden with respect to the 1962 return filed by Levy. The return, that he admits he signed, was prepared by Greenberg. It is so flagrantly false as to dispel any thought that Levy did not know Greenberg had prepared a false return for him to sign. He states that none of the false and fictitious statements were on the return when he signed it and that the return he signed had blank or unfilled-out portions. However, in another portion of his testimony Levy seems to admit it was filled out to the extent that it showed he would receive a refund before he signed it. He states he only used Andria's address as his address on returns that would produce a refund; that he knew the 1962 return he filed showed he was entitled to a refund, and that is why he used Andria's address on the 1962 return that Greenberg prepared. We hold the evidence is sufficent to establish fraud with respect to the return filed by Levy in 1962. This brings us to Exhibit "D". This is the return which, under respondent's theory of this case, is the 1962 income tax return of Roberta Levy. Respondent had the burden under section 6653(b), I.R.C. of 1954, to show that her "underpayment" *245 of 1962 tax was due to fraud. The term "underpayment" means a deficiency which is the amount by which the tax imposed by the taxing statutes exceeds the amount shown as tax upon the taxpayer's return if a return was made by the taxpayer. Section 6653(c) and section 6211, I.R.C. of 1954. Here respondent has no theory that Roberta did not file a return and Roberta testified she signed a return in her married name. In his answer alleging fraud respondent alleged: "That a federal income tax return for the year 1962 was filed by Roberta under her maiden name of Roberta Rubin." 375 It was respondent's first burden, under his theory of the case against Roberta, to introduce her 1962 income tax return. This he evidently feels he has done by Exhibit "D" and the evidence concerning the exhibit and the stipulation. Paragraph 4 of the stipulation merely stated "Exhibit D is a copy of the federal income tax return for the year 1962 filed in the name of Roberta Rubin, Roberta's maiden name." The stipulation leaves open the question of who signed the return and who filed it. In view of Roberta's testimony that she did not sign Exhibit "D" it was incumbent on respondent *246 to introduce some evidence that it was signed by her or by someone she authorized to sign for her. Otherwise, there can be no finding grounded on any evidence in the record that Exhibit "D" is her 1962 income tax return. Respondent points to various contradictions in Roberta's testimony. This would be of interest if there was any affirmative evidence that the signature on Exhibit "D" was hers or authorized by her. Respondent does not satisfy his burden of proving Exhibit "D" was Roberta's 1962 return by showing the weakness in her testimony that it was not. As stated, Roberta Levy testified flatly that the signature "Roberta Rubin" on Exhibit "D" is not her signature of her maiden name. [1] There is no testimony that she ever authorized anyone to sign Exhibit "D" for her. Greenberg testified he prepared Exhibit "D" for Arnold when Arnold came to his office with Roberta's W-2 form. He said he did not sign Roberta's maiden name to the return and he did not know who did. Arnold testified he did not sign his wife's maiden name to Exhibit "D". [2]
*247 This leaves the record wth no evidence as to Roberta's 1962 return. This means respondent did not sustain his burden of proving Roberta's fraudulent underpayment of her 1962 tax. We hold for petitioner Roberta Levy in docket No. 704-67. Decisions in the two dockets will be entered in accordance with this opinion. Decision will be entered for respondent and against petitioner Arnold Levy in docket No. 704-67. Decision will be entered against respondent and in favor of Roberta Levy in docket No. 704-67. Decision will be entered for petitioner in docket No. 705-67. Footnotes
1. The record rather indicates respondent did not feel the signature on Exhibit "D" was Roberta's. Roberta's signature of her married name is in the record on another document. The signature of the first name, Roberta, is not at all like the signature of the first name on Exhibit "D". ↩
2. There is also in the record a letter from respondent to Arnold's counsel requesting specimens for submission to a handwriting expert of Arnold's writing of a sample paragraph and 10 signatures of the name "Roberta Rubin" on cards enclosed in the letter with Arnold's signature on each card. The record shows this request was complied with but respondent did not introduce the specimens or any expert testimony. The specimens were all produced at the trial by respondent upon request of petitioners' counsel and he introduced them. The signature of "Roberta Rubin" on the said specimens is not at all like the signature on Exhibit "D".↩